IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEPHEN C. HOLCK, Individually ) <br> and as Trustee of the Trust ) <br> Agreement of Stephen C. Holck ) <br> Dated July 9, 2007 Under Agreement ) <br> Dated September 10, 2007, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THE BANK OF NEW YORK ) <br> MELLON CORPORATION; BNY ) <br> MELLON WEALTH ) <br> MANAGEMENT TRUST; ) <br> MELLON TRUST COMPANY OF ) <br> CALIFORNIA now known as BNY ) <br> MELLON, N.A.; BEN MCGLOIN; ) <br> HEIDI BENAVIDEZ; JOHN DOES ) <br> 1–10; JANE DOES 1–10; DOE ) <br> CORPORATIONS 1–10; and DOE ) <br> ENTITIES 1–10, ) <br> ) <br> Defendants. ) <br> _____ ) | CV. NO. 10-00550 DAE-KSC |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION; (2) TRANSFERRING ACTION TO THE UNITED STATES
DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

On February 7, 2011, the Court heard Defendants' Motion to Dismiss,

or, in the Alternative, For Transfer to the United States District Court for the

Central District of California ("Motion"). (Doc. # 5.) Margery S. Bronster, Esq.,

and Robert M. Hatch, Esq., appeared at the hearing on behalf of Plaintiff Stephen C. Holck ("Plaintiff"); Jeffrey S. Portnoy, Esq., Theodore D.C. Young, Esq., and Trevor Asam, Esq., appeared at the hearing on behalf of Defendants The Bank of New York Mellon Corporation, BNY Mellon Wealth Management Trust, Mellon Trust Company of California nka BNY Mellon, N.A., Ben McGloin, and Heidi Benavidez (collectively, "Defendants").  After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART the Motion.  The Court hereby TRANSFERS this action to the United States District Court for the Central District of California.

## BACKGROUND

I.      Facts and Procedural History

        On November 12, 2005, Plaintiff Stephen C. Holck's ("Plaintiff") wife died "as a result of a tragic medical mistake."  (Compl. ¶ 11.)  Plaintiff subsequently received a medical malpractice settlement of $1,250,000.  (Id.)  On July 17, 2007, Plaintiff met with Defendant Ben McGloin ("McGloin") in Honolulu for a presentation about having Mellon manage these funds.  (Id. ¶ 13.)  At this initial meeting, Plaintiff signed an Investment Management Account Agreement ("July 17, 2007 Agreement," Opp'n Ex. 1).  In August 2007, Plaintiff deposited approximately $1,256,353 in his investment account with Mellon.

(Compl. ¶ 18.)  McGloin was the senior portfolio manager for Plaintiff's investment account, and Defendant Heidi Benavidez ("Benavidez") was the portfolio manager.  (Id.)

In September 2007, after Plaintiff had been advised to create a trust and to change the name on his investment account to the name of his trust, the parties executed another Investment Management Account Agreement ("September 10, 2007 Agreement," Mot. Ex. 1).  (Opp'n at 4.)  The September 10, 2007 Agreement reflects the Stephen Charles Holck Trust as the account holder.  (See September 10, 2007 Agreement.)

Plaintiff withdrew $100,000 from his investment account in December 2007, and another $50,000 in February 2008.  (Compl. ¶ 21.)  In April 2008, Plaintiff allegedly told McGloin and Benavidez that he wanted to withdraw additional funds, but they purportedly advised him to obtain a line of credit instead.  (Id. ¶ 22.)  Plaintiff initially obtained a $525,000 line of credit, which was increased to $625,000 in August 2008.  (Id. ¶ 27.)  Plaintiff contends that this leverage against his investment account greatly exacerbated the losses he incurred in the Fall 2008 stock market downturn.  (Id. ¶¶ 28–31.)

On September 1, 2010, Plaintiff filed a Complaint in Hawaii state court against Defendants The Bank of New York Mellon Corporation, BNY

Mellon Wealth Management Trust, Mellon Trust Company of California nka BNY

Mellon, N.A., Ben McGloin, and Heidi Benavidez (collectively, "Defendants"), as

well as various Doe defendants, for damages and other remedies resulting from

Plaintiff's investment losses.  ("Compl.," Doc. # 1, Ex. A.)  Specifically, Plaintiff's

Complaint alleges Counts: (Count I) violation of Hawaii Revised Statutes Chapter

480 (id. ¶¶ 34–40); (Count II) violation of the Hawaii Uniform Securities Act (id.

¶¶ 41–45); (Count III) breach of fiduciary duty (id. ¶¶ 46–52); (Count IV) breach

of contract (id. ¶¶ 53–58); (Count V) unsuitability (id. ¶¶ 59–66); (Count VI) self-

dealing (id. ¶¶ 67–70); (Count VII) respondeat superior (id. ¶¶ 71–73); (Count

VIII) failure to supervise (id. ¶¶ 74–78); (Count IX) unjust enrichment (id.

¶¶ 79–80); (Count X) intentional misrepresentation (id. ¶¶ 81–84); (Count XI)

negligent misrepresentation (id. ¶¶ 85–88); (Count XII) negligence/gross

negligence (id. ¶¶ 89–91); and (Count XIII) punitive damages (id. ¶¶ 92–93).  On

September 27, 2010, Defendants removed the lawsuit to this Court on the basis of

diversity jurisdiction.  (Doc. # 1.)

On October 4, 2010, Defendants filed the instant Motion to Dismiss,

or, in the Alternative, For Transfer to the United States District Court for the

Central District of California ("Motion") on the basis that the forum selection

clause in the September 10, 2007 Agreement should be enforced.  ("Mot.," Doc.

# 5.)  Plaintiff filed an Opposition to the Motion on December 6, 2010.  ("Opp'n,"

Doc. # 13.)  Defendants filed a Reply on December 13, 2010.  ("Reply," Doc.

# 14.)

II.     The July 17, 2007 & September 10, 2007 Agreements

As noted, Plaintiff originally entered into the July 17, 2007

Agreement in Honolulu, following his meeting with McGloin.  (Compl. ¶ 13.)

After Plaintiff decided to create a trust and to change the name on his investment

account to the name of his trust, Plaintiff entered into the September 10, 2007

Agreement.  The July 17, 2007 Agreement and the September 10, 2007 Agreement

both contain the following identical provisions:

> **This Investment Management Account Agreement ("Agreement") authorizes the undersigned affiliate of The Bank of New York Mellon Corporation ("BNYM") as investment manager ("Manager") to open one or more Investment Management Accounts (an "Account") for the benefit of the undersigned client ("Client"), a Referred Client from MML Investor Services, Inc. ("Company").  Client hereby appoints Manager to act as Client's agent for the investment and disposition of the securities, money, or other property ("Property") held from time to time in the Account. Property which Manager accepts into the Account will be held in accordance with the terms which follow.**
>
> . . . .
>
> F.     **APPLICABLE LAW:** This Agreement shall be governed by and interpreted under the laws of the state in which the office of the Manager where the Account is managed is located and, to the extent applicable, the laws of the United States.

5

G.    **ENTIRE AGREEMENT:** <u>This Agreement</u>, including the Schedules and Exhibits referred to herein and other writings specifically identified herein or contemplated hereby, <u>is complete, reflects the entire agreement of the parties with respect to its subject matter, and supersedes all previous written or oral negotiations, commitments and writings</u>.    No promises, representations, understandings, warranties or agreements have been made by any of the parties hereto except as expressly set forth herein or in such Schedules and Exhibits or in such other writings; and all inducements to the making of this Agreement relied upon by any party hereto have been expressed herein or in such Schedules or Exhibits or in such other writings.

H.    **DISPUTE RESOLUTION:** This Agreement is subject to the requirement that any dispute, controversy, claim or disagreement between either of the parties to this Agreement, will first be submitted to nonbinding mediation in accordance with the Commercial Mediation Rules of the American Arbitration Association.    The Parties agree to participate in good faith in the mediation and negotiations related to the dispute for a period of thirty days commencing with the selection of the mediator and any extension of such period as mutually agreed to by the parties.    The parties will share equally in any costs of mediation.    The results of mediation will be non-binding on either party.    <u>In the event the dispute is not resolved through mediation, the dispute will be adjudicated in a court of competent jurisdiction sitting in the State whose law governs the terms of this Agreement</u>.    This Paragraph shall not apply to, and shall not in any other way hinder or restrict, the exercise by manager of any of its rights and remedies to collect monies owed to Manager by Client.

(July 17, 2007 Agreement at 1, 5–6 (emphases added); September 10, 2007

Agreement at 1, 5–6 (emphases added).)

The July 17, 2007 and September 10, 2007 Agreements differ in two

respects.  First, the July 17, 2007 Agreement reflects Stephen Holck as the

6

investment account holder (July 17, 2007 Agreement at 1), whereas the September 10, 2007 Agreement identifies the Stephen Charles Holck Trust as the account holder (September 10, 2007 Agreement at 1). Second, whereas on the last page of the July 17, 2007 Agreement, the space for "Manager's Office Address" is left blank (July 17, 2007 Agreement at 8), on the last page of the September 10, 2007 Agreement, the space for "Manager's Office Address" provides: "4695 MacArthur Court, Suite 240, Newport Beach, CA 92660" (September 10, 2007 Agreement at 8).

## STANDARD OF REVIEW

In "resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis. . . . Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings[.]" Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). However, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party[.]" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

When genuine issues of material fact are raised, the district court may hold an evidentiary hearing on the disputed facts. Id. "Whether to hold a hearing

on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." Id. Upon holding a hearing, "the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule 12(b)(3) motion. These factual findings, when based upon an evidentiary hearing and findings on disputed material issues, will be entitled to deference."[1] Id. at 1140.

"Alternatively, the district court may deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the record eliminates any genuine factual issue." Id. at 1139.

## DISCUSSION

For the reasons set forth below, the Court concludes that the forum selection clause in the September 10, 2007 Agreement is valid and enforceable, and requires that this lawsuit be brought in a "court of competent civil jurisdiction" in California. The Court therefore exercises its discretion to transfer this action to the United States District Court for the Central District of California.

---

[1] Neither of the parties here have requested an evidentiary hearing.

I.    <u>Applicability of the Forum Selection Clause</u>

As a threshold matter, the parties dispute which forum selection clause applies to the instant lawsuit.  Defendants rely on the forum selection clause in the September 10, 2007 Agreement as the basis for their Motion.  Plaintiff, in turn, asserts that there are multiple, inconsistent form contracts, and that, because of this inconsistency, Defendants' Motion should be denied.

As noted above, the forum selection clause in the September 10, 2007 Agreement provides in pertinent part: "In the event [a] dispute [arising from or in connection with this Agreement] is not resolved through mediation, the dispute will be adjudicated in a court of competent jurisdiction sitting in the State whose law governs the terms of this Agreement."  (September 10, 2007 Agreement at 6.) The applicable law for the September 10, 2007 Agreement is the law "of the state in which the office of Manager where the Account is managed is located."  (<u>Id.</u> at 5.)  The September 10, 2007 Agreement identifies the "Manager's Office Address" as "4695 MacArthur Court, Suite 240, Newport Beach, CA 92660."  (<u>Id.</u> at 8.) According to these unambiguous terms, Plaintiff's investment account was managed in Defendants' Newport Beach, California office, meaning that California law applies to the September 10, 2007 Agreement and that "any dispute,

controversy, claim or disagreement arising from or in connection with" the agreement "will" be brought in California.

Plaintiff's claims fall within the ambit of this forum selection clause. The September 10, 2007 Agreement authorized Defendants to open an investment account for Plaintiff and appointed Defendants as Plaintiff's agent for the investment and disposition of the property held in the investment account.  (Id. at 1.)  In the Complaint, Plaintiff discusses extensively how the investment relationship between himself and Defendants was formed as well as the fact that he relied upon Defendants for investment advice.  Plaintiff's specific counts in the Complaint all concern Defendants' investment decisions and Plaintiff's resulting losses, matters which "aris[e] from or in connection with" the September 10, 2007 Agreement.  Accordingly, the forum selection clause in the September 10, 2007 Agreement applies.

Plaintiff attempts to obfuscate the unambiguous language in the September 10, 2007 Agreement by relying on other agreements executed between the parties.  Plaintiff specifically relies on the following agreements, all of which contain either a choice of law clause and/or a forum selection clause: (1) the July 17, 2007 Agreement; (2) the Funds Transfer Agreement; (3) the April 8, 2008 and August 20, 2008 Investment Credit Line Notes; (4) the April 8, 2008 and August

20, 2008 Investment Credit Line Pledges; and (5) the April 8, 2008 and August 20, 2008 Guaranty and Suretyship Agreements. (Opp'n at 4–8, 10–12.) In the first instance, Plaintiff's claims do not pertain to any of these myriad agreements, such that their choice of law and forum selection clauses would be applicable here. Rather, as noted, the allegations in Plaintiff's Complaint clearly implicate the relationship created by the September 10, 2007 Agreement.[2]

Furthermore, these agreements are all extrinsic to the September 10, 2007 Agreement. Federal law governs the enforcement and interpretation of forum selection clauses in diversity cases, and provides that "extrinsic evidence is inadmissible to interpret an unambiguous contract." Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513–14 (9th Cir. 1988); see also Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam). In Manetti-Farrow, the plaintiff sought to introduce extrinsic evidence that it did not intend for the forum selection clause at issue to apply to tort claims. Manetti-Farrow, 858 F.2d at 514. After concluding that federal law applied to this issue, the Ninth Circuit held that because the forum selection clause was unambiguous, the plaintiff's preferred parol evidence was inadmissible to interpret it. Id. "[A] contract is ambiguous 'if

_____

[2] It is also unclear to the Court how these agreements, none of which designate Hawaii as the proper forum for this dispute, assist Plaintiff in his argument that this action should remain in Hawaii.

reasonable people could find its terms susceptible to more than one interpretation.'"  Doe 1, 552 F.3d at 1081 (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999)).  Here, the September 10, 2007 Agreement's forum selection clause is plain and unambiguous, and Plaintiff's claims clearly fall within the scope of this clause.  Reading this clause in connection with the choice of law provision as well as the manager's office address, it is readily apparent that the proper forum for lawsuits arising out of the September 10, 2007 Agreement is California.  Indeed, this is the only interpretation that can be given to these provisions.  Plaintiff therefore cannot use these various extrinsic agreements to inject uncertainty into the unambiguous forum selection clause contained in the September 10, 2007 Agreement.[3]

Finally, Plaintiff argues that the forum selection clause in the September 10, 2007 Agreement "does not apply to most Defendants, and the Court should not require Plaintiff to split his claims."  (Opp'n at 2.)  The forum selection

---

[3] Plaintiff also contends that the September 10, 2007 Agreement did not supercede the July 17, 2007 Agreement, such that the July 17, 2007 Agreement's forum selection clause still applies.  (Opp'n at 9–10.)  According to Plaintiff, this forum selection clause is ambiguous because it left the space for the "Manager's Office Address" blank.  (See id. at 18.)  The July 17, 2007 Agreement and its forum selection clause are irrelevant to the instant inquiry because the September 10, 2007 Agreement's forum selection clause is unambiguous and clearly applies to the exclusivity of the July 17, 2007 Agreement.

clause, by its terms, applies to "any dispute, controversy, claim, or disagreement between either of the parties to this Agreement." (September 10, 2007 Agreement at 5 (emphasis added).) However, the Ninth Circuit has made clear that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." Manetti-Farrow, 858 F.2d at 514 n.5 (citation and quotation signals omitted). When "the alleged conduct of the non-parties is so closely related to the contractual relationship [at issue,] the forum selection clause applies to all defendants." Id.; see also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1354 (9th Cir. 1990). Here, as noted, Plaintiff's claims all pertain to Defendants' purported mismanagement of Plaintiff's investments. The conduct of each Defendant is intertwined in such a way that, although they are not all parties to the September 10, 2007 Agreement, the forum selection clause in that agreement applies to each Defendant for purposes of this lawsuit. Additionally, there is no information or evidence before the Court to indicate that any of the Defendants would not agree to jurisdiction in California, the selected forum. Plaintiff's argument on this point is therefore inapposite.

II.     Enforcement of the Forum Selection Clause

        Federal law governs the enforcement of forum selection clauses in

diversity cases.  Manetti-Farrow, 858 F.2d at 513.  According to federal law, forum

selection clauses are presumptively valid and should be honored "absent some

compelling and countervailing reason."[4]  M/S Bremen v. Zapata Off-Shore Co.,

407 U.S. 1, 12 (1972); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 497

(9th Cir. 2000) (acknowledging that Bremen "controls the consideration of a

motion to dismiss for improper venue based upon a forum selection clause");

Argueta, 87 F.3d at 325 ("Although Bremen is an admiralty case, its standard has

been widely applied to forum selection  clauses in general.").  "The party

challenging [a forum selection] clause bears a 'heavy burden of proof' and must

---

[4] Plaintiff argues that Bremen is inapplicable here and that pursuant to
Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), the Court should
resolve this case solely by looking to the criteria set forth in 28 U.S.C. § 1404(a).
(Opp'n at 13–16.)  Plaintiff contends that, according to Stewart, Bremen does not
apply in diversity actions when the alleged forum selection clause allows transfer
to another federal district court.  However, the Ninth Circuit has expressly held that
the Bremen standard is applicable to the enforcement of forum selection clauses in
diversity cases, Manetti-Farrow, 858 F.2d at 513, and that a motion to enforce a
forum selection clause can properly be brought as a Rule 12(b)(3) motion to
dismiss for improper venue, Argueta, 87 F.3d at 324.  Although the Court is not
persuaded by Plaintiff's interpretation of Stewart, in the interest of fairness, it will
analyze the propriety of enforcing the forum selection clause under both Bremen
and Section 1404(a).  Because Plaintiff's counsel did not specifically brief the
standard set forth in Bremen and its progeny, the Court will discuss Plaintiff's
arguments in the Bremen analysis to the extent that they are relevant.

'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'"  Murphy, 362 F.3d at 1140.

Enforcement of a forum selection clause is "unreasonable" if: (1) "inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; and (3) "'enforcement would contravene a strong public policy of the forum in which suit is brought.'"  Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing and quoting Bremen, 407 U.S. at 12–13, 15, 18).  Plaintiff argues that the inclusion of the forum selection clause in the September 10, 2007 Agreement was the product of fraud or overreaching and that it will deprive him of his day in court.

A.    Fraud or Overreaching

According to Plaintiff, the sole purpose of the September 10, 2007 Agreement was to change the name of the investment account holder to Plaintiff's trust and, because of this, he "had no duty to read [the agreement] searching for the address that Defendants slipped in."  (Opp'n at 19.)  Plaintiff also submitted a declaration asserting that no one explained to him the contents of the September 10, 2007 Agreement and that he was not given an opportunity to revise any of the

15

provisions in this agreement.  (Opp'n, Declaration of Stephen C. Holck "Holck Decl.," ¶ 10.)

The circumstances surrounding inclusion of the forum selection clause in the September 10, 2007 Agreement do not give rise to either fraud or overreaching.  In Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991), the Supreme Court enforced a forum selection clause contained in a cruise line's passenger contract ticket, despite the non-negotiable nature of the clause and the parties' difference in bargaining power.  Carnival Cruise, 499 U.S. at 587, 595. The Ninth Circuit has held that Carnival Cruise stands for the proposition that "a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause."  Murphy, 362 F.3d at 1141 (concluding that allegations of power differential and non-negotiability are insufficient to overcome the "strong presumption in favor of enforcing forum selection clauses").  Faced with this precedent, to the extent that Plaintiff alleges fraud or overreaching because the September 10, 2007 Agreement was a form contract and because Plaintiff had less experience than Defendants in these matters, those arguments must necessarily fail. Plaintiff arguably had more bargaining power than the plaintiffs in Carnival Cruise and Murphy because Plaintiff was a desirable client who approached Defendants with a substantial sum of money that he wished to invest.

16

Moreover, "simply alleging that one was duped into signing the contract is not enough[;] . . . [f]or a party to escape a forum selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.'" Lloyd's of London, 135 F.3d at 1297 (citing and quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974)); see also Murphy, 362 F.3d at 1141 (characterizing overreaching as a "potential ground short of fraud"). Although Plaintiff may not have understood the ramifications of entering into the September 10, 2007 Agreement, in the absence of facts or evidence indicating that Plaintiff was somehow coerced or that Defendants engaged in some other nefarious conduct with regard to the forum selection clause, this does not rise to the level of fraud or overreaching.

Plaintiff also relies on an example from the Restatement (Second) Conflict of Laws § 187 comment b, which provides as follows:

> A presents to B for signature a contract which embodies the terms of their prior agreement but which also provides that the rights of the parties under the contract shall be governed by the law of state X. A does not wish B to know of the provision calling for application of X law and therefore says that there is no reason for B to read the contract since it does no more than set forth their earlier agreement. B signs the contract without reading it in reliance upon A's word. The forum will not give effect to the provision calling for application of X law.

(Opp'n at 19.) Even assuming that this example applies to the Court's determination, the situation present here is readily distinguishable. Indeed, there is no evidence that Defendants were attempting to hide from Plaintiff the effect of the forum selection and choice of law clauses contained in the September 10, 2007 Agreement, and there is no proof that Defendants told Plaintiff not to read this document because it only set forth the parties' earlier agreement. Although Plaintiff attests that Defendants told him the September 10, 2007 Agreement was just a "formality" (Holck Decl. ¶ 10), this does not rise to the level of an affirmative misrepresentation such as is present in Plaintiff's example.

Additionally, Plaintiff relies on <u>Corna v. American Hawaii Cruises, Inc.</u>, 794 F. Supp. 1005, 1008 (D. Haw. 1992) for the assertion that a "forum selection clause is not enforceable against a Plaintiff's choice of forum unless it has been 'reasonably communicated' to the plaintiff and provides clear notice." (Opp'n at 17.) Plaintiff contends that the September 10, 2007 Agreement does not provide meaningful notice that Plaintiff would be limited to a California forum, and as a result, cannot be enforced. (<u>Id.</u> at 17–20.) The Court is not persuaded. In contrast to the situation here, wherein the Court's jurisdiction is based solely on diversity of citizenship, the court in <u>Corna</u> had admiralty jurisdiction and therefore applied maritime law. <u>Corna</u>, 794 F. Supp. at 1008. Federal maritime law applies

18

a two-prong test to determine the enforceability of a forum selection clause, the first part being whether the terms of the clause were reasonably communicated—the "reasonable communicativeness" test.  See id.  Although the reasonable communicativeness test applies generally to passengers of common carriers, see, e.g., Deiro v. American Airlines, Inc., 816 F.2d 1360, 1364 (9th Cir. 1987), it has not been extended to the traditional Bremen analysis.  Even assuming arguendo that, to be enforceable, the forum selection clause here must have been reasonably communicated to Plaintiff, that standard is easily met.  The September 10, 2007 Agreement's forum selection clause is unambiguous, and plainly indicates that California is the designated forum.  Additionally, the forum selection clause is set in the same size font as the remainder of the September 10, 2007 Agreement, is contained under a bold heading stating "**DISPUTE RESOLUTION**," and is part of an agreement that is only eight-pages long.  Plaintiff emphasizes that to determine the applicable forum, the reader must first read the Dispute Resolution section, then read the Choice of Law section, then refer to the Manager's Office Address.  (Opp'n at 17–18.)  Although this is true, each of these provisions is clear and easily understood.  This is not a situation where the forum selection clause is buried in pages of fine print and legalese.  On

these facts, the Court cannot conclude that Plaintiff did not have reasonable notice of the forum selection clause in the September 10, 2007 Agreement.[5]

B.    Deprivation of Day in Court

Plaintiff also contends that he will suffer a "significant hardship" if the forum selection clause is enforced and he is required to litigate in California. (Opp'n at 12–13.) Specifically, Plaintiff attests that he has been in a "dire financial situation" since "losing [his] life savings" and that traveling to California would be a "significant financial hardship" because Plaintiff would incur "additional costs and [would] have to hire an attorney outside the [S]tate of Hawaii." (Holck Decl. ¶ 22.) Additionally, Plaintiff alleges that since his wife's death, he has been the primary caregiver and sole legal guardian for his three minor grandchildren. (Id. ¶ 20.) Plaintiff represents that "[i]t would be difficult to arrange for their supervision and care if [he] has to travel" outside of Hawaii. (Id.) Finally, Plaintiff submitted a letter from his treating physician stating that "it is inadvisable, for health reasons, for [Plaintiff] to travel to California." (Opp'n Ex. 7.)

_____

[5] Plaintiff raises additional arguments on this point, premised upon the interplay between the July 17, 2007 and September 10, 2007 Agreements. The Court has already concluded that the forum selection clause in the September 10, 2007 Agreement is relevant and applicable to this Court's analysis and that the July 17, 2007 Agreement is extrinsic and cannot be considered.

To avoid enforcement of a forum selection clause on this ground, "trial in the contractual forum [must] be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court." Bremen, 407 U.S. at 18. This exception has been strictly construed. See, e.g., Argueta, 87 F.3d at 325–27 (enforcing a forum selection clause requiring that the parties litigate the dispute in Mexico, even though the plaintiff argued that he would be persecuted and deprived of a fair hearing if he returned to Mexico and attempted to adjudicate the lawsuit there); Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc., 926 F.2d 865, 868–69 (9th Cir. 1991) (enforcing a forum selection clause contained in an employment agreement, which required the plaintiff, a California resident, to bring suit in Saudi Arabia despite the fact that the plaintiff and his family had been ordered to leave Saudi Arabia within ten days of being terminated from his position). However, the Ninth Circuit held in Murphy that the combination of a plaintiff's "physical and financial limitations" could together preclude that plaintiff from having his "day in court." Murphy, 362 F.3d at 1143. In Murphy, the personal injury plaintiff submitted an affidavit to the district court, which provided:

> Since my accident I have been unable to work. Because I was unable
> to work, I earned no income, and the truck that I used to earn my
> livelihood was repossessed. I presently live on my disability

payments, which amount to approximately $2,000.00 per month. I am 61 years old. My wife, who is 61 years of age, is also disabled and cannot work. She receives approximately $234.00 per month in disability payments. Each month we use all of our combined disability payments to pay outstanding bills. We also put an average of $200 $300 per month on credit cards, on which we are making minimum payments. We have no disposable income . . . . I could not afford to maintain this case if it were in a Wisconsin court.

Id. at 1142. The plaintiff also asserted that "even though driving to Wisconsin [from Oregon] might be an affordable way for him to travel, his injury prevents him from sitting in a position of limited mobility for more than one hour; that although medication reduces the pain, it impairs his ability to drive; and that his wife cannot drive because of her injuries and disabilities." Id. The Ninth Circuit credited these allegation for purposes of the Rule 12(b)(3) motion. As a result, the Ninth Circuit vacated the district court's order dismissing the action and remanded for further proceedings, including an evidentiary hearing if necessary. Id. at 1143.

Here, although Plaintiff asserts that he suffers both physical and financial limitations, which may hamper him from pursuing this lawsuit in California, Plaintiff does not provide nearly the level of specificity regarding these limitations as the plaintiff did in Murphy. In contrast to the Murphy plaintiff's detailed affidavit setting forth his physical and financial troubles, here Plaintiff's declaration contains solely vague and conclusory allegations. For example,

Plaintiff states that he is in a "dire financial situation" and that it would be a "significant financial hardship" for him to litigate this matter outside of Hawaii (Holck Decl. ¶ 22), but Plaintiff does not provide why this would be so. Although Plaintiff claims that he suffered significant losses from his investments, he gives no information as to the amount of his losses. Additionally, Plaintiff attests that because he is the primary caregiver for his three minor grandchildren, it would be difficult to arrange for their supervision and care if he has to travel outside of Hawaii (id. ¶ 20), but Plaintiff does not elaborate on this assertion in any meaningful manner. Finally, even crediting as true, Plaintiff's three-sentence doctor's note stating that it is inadvisable for him to travel to California, the Ninth Circuit is clear that an inability to travel to the designated forum, without more, is insufficient to constitute deprivation of a day in court. See Argueta, 87 F.3d at 327 ("[E]ven if [the plaintiff's] fear of returning to Mexico is genuine, [he does not] provide any information showing that [his] physical presence in Mexico is required to pursue the civil action.").

Plaintiff's supplemental declaration sheds little light on the matter. In the supplemental declaration, Plaintiff explains that his health has gone dramatically downhill since July 2010 (Holck Supp. Decl. ¶ 12), that he has been unable to work for five years (id.), and that he has "significant debt as a result of

the loss of all of the money" in his investment account (id. ¶ 13), but Plaintiff does not explain the nature of this debt and whether he currently has any source of income. Plaintiff also represents that, in the past, family members have declined to help him care for his three minor grandchildren (id. ¶ 5), but he does not describe with specificity whether he is still unable to find such assistance.

The information presented is simply insufficient for the Court to find that Plaintiff is both physically and financially unable to litigate in California, particularly because it is undisputed that Plaintiff recently received a $1,250,000 settlement. Moreover, Plaintiff's concerns about traveling to California and obtaining assistance in caring for his minor grandchildren are mitigated by the fact that many aspects of the lawsuit can be handled by teleconference and that Plaintiff's deposition can be taken in Hawaii if necessary. Although the Court is sympathetic to Plaintiff's circumstances, in light of the stringent standard set forth in Bremen, it cannot conclude that enforcing the forum selection clause would deprive Plaintiff of his day in court.[6] Bremen, 407 U.S. at 18.

---

[6] At the hearing on this matter, Defendants argued that Plaintiff's poverty and ability to travel are belied by the fact that he recently lived in South Carolina and that he possesses investment property in that state. The Court permitted the parties to submit supplemental declarations on this issue, which was not previously set forth in the record. McGloin and Benavidez filed declarations on February 9, 2011. (Docs. ## 18, 19.) Plaintiff filed a supplemental declaration on February 11,
(continued...)

In sum, accepting Plaintiff's assertion of facts as true and giving him all reasonable inferences, the Court cannot conclude that the forum selection clause in the September 10, 2007 Agreement was the result of fraud or overreaching or will deprive Plaintiff of his day in court.

III.    Mandatory or Permissive

Even if a forum selection clause is valid, the court must also determine whether it is mandatory or permissive.  See Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 763 (9th Cir. 1989).  Courts make this determination by looking to the wording of the agreement and applying ordinary principles of contract interpretation.  Talatala v. Nippon Yusen Kaisha Corp., 974 F. Supp. 1321, 1325 (D. Haw. 1997).  A forum selection clause is mandatory if it contains language that "clearly designates a forum as the exclusive one."  N. Cal. Dist. Council of Laborers v. Pittsburg-De Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995); see also Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987) ("[F]orum selection clauses have been held to require litigation in a

---

[6](...continued)
2011.  (Doc. # 20.)  In his supplemental declaration, Plaintiff attests that he lived in South Carolina from January 2008 to June 2009 and that his health deteriorated only after he returned to Hawaii.  (Id. ¶¶ 7, 10–11.)  Plaintiff also states that he does not have an interest in the property he renovated in South Carolina.  (Id. ¶ 8.)  Plaintiff's supplemental declaration thus minimizes the impact of Defendants' assertions.

particular court [when] the language of the clauses clearly required exclusive jurisdiction."); Docksider, 875 F.2d at 764 (concluding that a forum selection clause is enforceable when mandatory language "makes clear" that venue "lies exclusively in the designated county").

In Docksider, the contract at issue provided that the parties agreed to the jurisdiction of the courts of the State of Virginia and further stated that "[v]enue of any action brought hereunder shall be deemed to be in Glouchester County, Virginia." Docksider, 875 F.2d at 763. The Ninth Circuit concluded that the forum selection clause was enforceable because mandatory language specified the venue and the language of the clause indicated that jurisdiction was exclusive. Id. at 764; see also Bremen, 407 U.S. at 2, 20 (concluding that the forum selection clause was mandatory when it provided that "[a]ny dispute arising must be treated before the London Court of Justice"); Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 275 (9th Cir. 1984) (concluding that the forum selection clause was mandatory when the clause provided that "any and all disputes arising out of or in connection with this Agreement shall be litigated only in the Superior Court for Los Angeles, California (and in no other")); Talatala, 974 F. Supp. at 1325 (holding that the forum selection clause was mandatory when the

contract stated that "any action thereunder shall be brought before the Tokyo District Court in Japan").

In contrast, the court in <u>Hunt</u> concluded that a forum selection clause was permissive when the contract provided: "The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract." <u>Hunt</u>, 817 F.2d at 76. The court noted that although the clause indicated that the parties consented to the jurisdiction of the Orange County courts, the clause said nothing about the courts having exclusive jurisdiction. <u>Id.</u> at 77; <u>see also</u> <u>N. Cal. Dist. Council of Laborers</u>, 69 F.3d at 1036–37 (concluding that a forum selection clause, which provided "[a] decision of the Board of Adjustment . . . or the decision of a permanent arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California," was permissive because it did not mandate exclusive jurisdiction in the designated forum).

The forum selection clause in the September 10, 2007 Agreement contains mandatory language, specifying that in the event that a dispute arising from the agreement cannot be resolved through mediation, "the dispute <u>will</u> be adjudicated in a court of competent civil jurisdiction sitting in the State whose law

governs the terms of th[e] [a]greement." (September 10, 2007 Agreement at 5–6 (emphasis added).) Construing this provision with the other terms in the September 10, 2007 Agreement reveals that California is the designated forum and that it has exclusive jurisdiction, such that any dispute arising from the agreement will be adjudicated there. Accordingly, the forum selection clause is mandatory, and not permissive.

IV.     Dismissal or Transfer

Because the forum selection clause in the September 10, 2007 Agreement is applicable and enforceable, the instant lawsuit must be brought in a "court of competent civil jurisdiction" in California. The Court has the discretion to either dismiss or transfer this case. Title 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer, rather than dismissal, is appropriate here. Dismissal of this action would require Plaintiff to incur the time and expense of re-filing this lawsuit in California as well as the associated delay in proceedings. Although Defendants initially requested dismissal, at the hearing on this matter, they conceded that transfer would be the more appropriate alternative. In accordance with the parties' preference, and in the

interest of judicial economy, the Court concludes that justice is best served by transfer, rather than dismissal.

V.      Convenience Transfer Pursuant to 28 U.S.C. § 1404(a)

As to Defendants' alternative argument, transfer is also appropriate pursuant to 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" Stewart, 487 U.S. at 29 (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

A motion to transfer venue pursuant to Section 1404(a) requires the district court to consider a number of factors, including the following: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources

29

of proof." <u>Jones</u>, 211 F.3d at 498–99 (citations omitted). The presence of a forum

selection clause is a "significant factor that figures centrally" in the district court's

Section 1404(a) analysis. <u>Stewart</u>, 487 U.S. at 29. The public policy of the forum

is another factor relevant to the district court's Section 1404(a) determination.

<u>Jones</u>, 211 F.3d at 499.

   As to the first factor, the location where the relevant agreement was

negotiated and executed, Plaintiff executed the September 10, 2007 Agreement in

Honolulu, then he sent it to California where McGloin executed it in his Newport

Beach office. (Holck Decl. ¶ 10; Mot., Declaration of Ben McGloin "McGloin

Decl." ¶ 3.) Because the relevant agreement was executed in both Hawaii and

California, this factor is neutral.

   As to the second factor, the state that is most familiar with the

governing law, the September 10, 2007 Agreement contains a choice of law

provision, which, when read in connection with the "Manager's Office Address,"

provides that this agreement "shall be governed by and interpreted under"

California law. (<u>See</u> September 10, 2007 Agreement at 5.) Plaintiff argues that

this choice of law provision is inapplicable to the majority of his claims because

they are based on tort and statutory theories, which do not fall within the ambit of

this provision. (Opp'n at 24–25.) Although Plaintiff brings just one breach of

30

contract claim (Compl. ¶¶ 53–58), many of Plaintiff's other claims, such as breach of fiduciary duty (id. ¶¶ 46–52) and unsuitability (id. ¶¶ 59–66), may also require interpretation of the September 10, 2007 Agreement. Because this Court does not have the same level of experience with California law as does the United States District Court for the Central District of California, and because interpretation of the September 10, 2007 Agreement figures centrally in Plaintiff's lawsuit, this factor favors transfer.

As to the third factor, the plaintiff's choice of forum, Plaintiff filed this lawsuit in Hawaii, which counsels against transfer to California.

As to the fourth factor, the respective parties' contacts with the forum, Plaintiff is a resident of Hawaii, whose only contact with California is that his investment account was managed there. Although Defendants met with Plaintiff in Hawaii, they have limited contacts in the state, and do not even maintain an office in Hawaii. This factor is neutral.

As to the fifth factor, the contacts relating to the plaintiff's cause of action in the chosen forum, Plaintiff places undue weight on the fact that the parties' four in-person meetings took place in Hawaii. The vast majority of the communications pertinent to the instant lawsuit took place by mail, e-mail, or telephone, with Plaintiff conversing from Hawaii and Defendants conversing from

California.  Further, Plaintiff's investment account itself was always maintained and handled in California.  This factor is neutral.

As to the sixth factor, differences in the cost of litigation in the two forums, Plaintiff is a Hawaii resident, and he argues that it would be "prohibitively burdensome" for him to litigate in California.  (Opp'n at 26–27.)  As for Defendants, McGloin and Benavidez are California residents (Compl. ¶¶ 8–9), The Bank of New York Mellon Corporation is a Delaware corporation with its principal place of business in New York (id. ¶ 5; Mot. at 16–17), BNY Mellon Wealth Management Trust is a privately owned company domiciled in Delaware (Compl. ¶ 6), and Mellon Trust of California nka BNY Mellon, N.A. has its principal place of business in Pennsylvania (id. ¶ 7).  Regardless of the forum in which this lawsuit proceeds, the parties will incur some expense due to travel.  On balance, it appears that litigating this action in California may require less expense, particularly because Plaintiff's investment account was managed there.  However, because this factor does not clearly weigh in favor of either party, the Court considers it to be neutral.

As to the seventh factor, the availability of compulsory process to compel attendance of unwilling nonparty witnesses, the parties agree that this

factor is neutral because neither Plaintiff nor Defendants have identified any unwilling nonparty witnesses.  (Opp'n at 27; Reply at 16.)

As to the eighth factor, ease of access to sources of proof, Plaintiff asserts that his records relating to his relationship with Defendants are all located in Hawaii.  (Opp'n at 27.)  Conversely, Defendants argue that because Plaintiff's investment account was managed in California, "relevant documents, individuals with knowledge of Defendants' policies, and witnesses to Defendants' alleged acts or omissions" are all likely to be located in California.  (Mot. at 17–18.)  Although the Court does not discount the importance of Plaintiff's records, it appears that the majority of the documents and information pertinent to this lawsuit are located in California.  This factor favors transfer.

Considering all of the Section 1404(a) factors discussed above, and taking into account the presence of a forum selection clause, which is a "significant factor" in this Court's Section 1404(a) analysis, the Court concludes that California is the more appropriate forum for this lawsuit.  Thus, both <u>Bremen</u> and Section 1404(a) counsel against maintaining this lawsuit in Hawaii.  Accordingly, the Court exercises its discretion to transfer this action to the United States District Court for the Central District of California.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion.  (Doc. # 5.)  The Clerk of the Court is hereby directed to transfer this case to the United States District Court for the Central District of California.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 14, 2011.

_____
David Alan Ezra
United States District Judge

Holck v. The Bank of New York Mellon Corp. et al., Cv. No. 10-00550 DAE-KSC; ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION; (2) TRANSFERRING ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA